FILED
2013 May-20  PM 04:15
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| CURTIS JOHNSON, | ) | |
| | ) | |
| Plaintiff; | ) | |
| | ) | |
| vs. | ) | |
| | ) | 2:12-cv-275-LSC |
| GESTAMP ALABAMA, LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

MEMORANDUM OF OPINION

I.      Introduction

This is a case based on Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 1981, the Age Discrimination in Employment Act of 1967 ("ADEA"), the Fair Labor Standards Act of 1938 ("FLSA"), and Alabama law. Curtis Johnson ("Plaintiff") claims his former employer, Gestamp Alabama, LLC ("Gestamp"), discriminated against him on account of his race and age when it terminated his employment and denied him training opportunities, created a racially hostile work environment, retaliated against him for filing complaints, and breached either an express contract or an implied-in-fact contract. Following discovery, Gestamp filed a

Motion for Summary Judgment that prompted the filing of several other motions by both parties, all of which are ripe for consideration.

## II.    Facts[1]

Plaintiff, an African-American male born on May 18, 1966, was hired by Gestamp on or about May 17, 2004. Gestamp is a stamping and welding facility, providing parts to Mercedes-Benz U.S. International ("MBUSI") and other automotive manufacturers. Plaintiff was employed as a Team Leader for the Ultrasound Technology Group ("UT Group") until his discharge. The UT Group was divided into first shift and second shift. Plaintiff was on second shift during his employment with Gestamp except for a two week period in 2008 when he was temporarily moved to first shift due to layoffs. Plaintiff's job entailed, among other things, supervising the Associates in the UT Group, making sure parts were up to

---

[1] The facts set out in this opinion are gleaned from the parties' individual submissions of facts claimed to be undisputed, their respective responses to those submissions, and the Court's own examination of the evidentiary record. All reasonable doubts about the facts have been resolved in favor of the nonmoving party. *See Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002). These are the "facts" for summary judgment purposes only. They may not be the actual facts. *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

That said, certain of Plaintiff's statements of fact are accompanied by citations to record excerpts that are inadmissible. As to those items, the Court cannot accept counsel's representations of fact and will not independently examine uncited portions of the record in search of support for a particular proposition. *See, e.g., Adler v. Wal–Mart Stores, Inc.*, 144 F.3d 664, 672 (10th Cir. 1998) (federal courts "are wary of becoming advocates who comb the record of previously available evidence and make a party's case for it"); *Nieves v. University of Puerto Rico*, 7 F.3d 270, 276 (1st Cir. 1993) ("Factual assertions by counsel in motion papers, memoranda, briefs, or other such self-serving documents, are generally insufficient to establish the existence of a genuine issue of material fact at summary judgment."); Rule 56(c)(1)(A), Fed.R.Civ.P. (litigant on summary judgment asserting that particular facts are or are not disputed "must support the assertion by . . . citing to particular parts of materials in the record"). On summary judgment, a district court "need consider only the cited materials" in the record. Rule 56(c)(3).

specification and the welds were properly made, programming the UT Group computers, performing weld destructs, and inputting data into a computer during weld destructs.

Shortly after becoming Team Leader for second shift, Plaintiff discussed stacking his breaks with Stuart Norwood ("Norwood"), Plaintiff's Group Leader at the time he was hired, and Jorge Herrera ("Herrera"), Plaintiff's Manager at the time he was hired. Gestamp Associates receive a 20-minute paid break during their shift, and a separate, unpaid 30-minute meal period. Associates received another 10-minute break after working over nine hours, and another break after working over twelve hours. By stacking breaks, Plaintiff could take one long break rather than several short breaks. Both of his supervisors gave Plaintiff permission to stack his breaks under certain circumstances. By January of 2011, however, both Norwood and Herrera were no longer in a position to give Plaintiff permission to stack his breaks. Instead, Plaintiff reported to Maintenance Manager Mike Crawford ("Crawford"), a Caucasian male, from approximately January 2008 until November 2010, and then to Quality Manager John Nelson ("Nelson"), a Caucasian male, until his discharge.

During the course of his employment, Plaintiff complained on a regular basis to his supervisors about the lack of manpower on second shift and the need for more help. He would occasionally complain about the leadership and work ethic of first shift

Team Leader Kevin Childers ("Childers"), a Caucasian male whom Plaintiff alleges is an "appropriate comparator" for purposes of his race discrimination claims. Plaintiff also complained about Childers playing on his computer. One time, while Plaintiff was trying to get Crawford to talk to the Associates on first shift about Childers, Crawford said, "I don't want to meet with them because they're going to throw Kevin [Childers] underneath the bus." (Pla. Depo. 165:7–9.) Crawford then told Plaintiff he would look into Plaintiff's concerns. Plaintiff also complained to Norwood about Childers taking long smoke breaks. Nelson became aware that Childers took smoke breaks on his first day as Quality Manager.

At some point during the course of his employment, Plaintiff attempted to receive training in skills such as cut and etch, a job duty of first shift but not second shift. In fact, he was willing to come in on Saturdays to try and gain these skills that he thought were vital to his advancement in the company. He received some training in cut and etch, but could not continue because of his workload. It was also difficult for him to receive training because Childers, the Associate who would have to train him, was either never around or always busy when Plaintiff wanted to train.

In January of 2011, Gestamp's Human Resources Manager Marva Morgan ("Morgan"), an African-American female, began investigating the time during Plaintiff's shift that he spent away from his work area after an African-American

Associate reported to Morgan that she had trouble locating Plaintiff. Morgan requested assistance from Nelson, who had Quality Engineer Kenny Green ("Green") observe Plaintiff. Green reported that Plaintiff was away from his station for approximately one hour on January 27, 2011, and for approximately one hour and fifteen minutes on February 1, 2011. (Doc. 17-1 at 78, 80.)

Morgan then asked second shift's senior Group Leader, Darrick Stallworth ("Stallworth"), an African American male, to observe Plaintiff. Stallworth reported that Plaintiff was away from the entire Gestamp facility for over an hour on February 7, 2011. Stallworth was aided in his investigation by Group Leader Armen Weinrick ("Weinrick"), a Caucasian Male, who independently sent Morgan an e-mail essentially repeating what Stallworth reported. Morgan was informed by Stallworth, Nelson, and Plant Manager Jamie Mitchell ("Mitchell") that none of them authorized Plaintiff's absence on February 7. On February 10, Morgan concluded from her investigation that Plaintiff violated a "Zero Tolerance" policy,[2] but due to staffing concerns she had to delay any adverse employment decision until she could be certain that Plaintiff's job duties would be filled if she decided to terminate him.

---

[2]Gestamp's Associate Handbook sets forth that certain policy violations are deemed "Zero Tolerance" because of the severity of the violation to the continuous staffing of the production process. A "Zero Tolerance" policy violation results in a discharge without any prior warnings for violations. The Associate Handbook prescribes that "Zero Tolerance" violations include "leaving the plant during work hours without permission" and "excessive unauthorized absence from workstation during the workday." (Morgan Aff'd, ¶ 7.)

Following her investigation, Morgan attempted to find a replacement for Plaintiff who could immediately and temporarily perform his job duties. She first attempted to hire Greg Lucas ("Lucas"), a Caucasian male whom was laid off prior to Plaintiff's termination and whom Plaintiff alleges is an "appropriate comparator" for purposes of his race discrimination claim. Lucas declined when he realized he would be replacing Plaintiff. She ended up settling with Kristopher Thompson ("Thompson"), a young Caucasian male whom Plaintiff alleges is an "appropriate comparator" for purposes of his discrimination claims. Thompson wanted to alter his schedule because he was taking classes at school, so he was transferred to the UT Group second shift while Plaintiff was still employed, with the intention of taking over Plaintiff's job duties once Plaintiff was terminated. Thompson had prior experience in the UT Group, and also as a Team Leader.

In the early morning of February 16, 2011, after Morgan's investigation but before any employment decision was made, a heated incident occurred between Plaintiff and Weinrick. Plaintiff believed that parts were not being delivered to the UT Group on time, so he went to talk to Weinrick and Jay Johnson ("J. Johnson"), another second shift Group Leader, about the importance of getting parts to the UT Group as soon as possible. About twenty minutes after this conversation, Weinrick approached the UT Group and accused its Associates of harassing one of his

Associates. When Plaintiff intervened, Weinrick yelled at him, pounded his fists on a table, and threatened to write him up and have him fired.

Plaintiff sent an e-mail to Nelson and Morgan detailing the incident, and explained that he would talk to them the next day about it. The following day, Plaintiff attempted to inform Morgan of what he believed was Weinrick's race-based harassment. However, before he could do so, she told him to discuss the matter with his supervisor first before involving Human Resources, in accordance with Gestamp policy. About thirty or forty minutes later, Crawford[3] and Nelson came to talk with Plaintiff. He complained about Weinrick's behavior the previous night and alleged that Weinrick had been harassing Plaintiff. He also explained his belief that Weinrick was a racist. Crawford and Nelson told Plaintiff, "you need to let this go." (Pla. Depo. 122:19–20.) Plaintiff also believes they threatened him by saying if he didn't let it go, people were going to lose their jobs.

A few weeks before his termination, Plaintiff had issues with clocking in and out, and reported these issues to Morgan. He also reported the issues to Childers and his supervisor at the time through e-mails. Plaintiff received pay adjustments when he found an error in his time worked. At the time he brought his clocking issues to Morgan's attention, he informed her that he was stacking breaks.

---

[3]Although Crawford accompanied Nelson, it is undisputed that Plaintiff did not report to Crawford at the time of his conversation regarding Weinrick. (Doc. 18, ¶ 7.b.)

On March 28, 2011, Plaintiff was suspended in accordance with Getamp's termination procedures which require an Associate's suspension prior to a decision to terminate. After reviewing the results of her investigation, Morgan terminated Plaintiff's employment based upon his violation of Gestamp's "Zero Tolerance" policy.

Following Plaintiff's termination, Thompson performed Plaintiff's job duties. While working as second shift Team Leader, he trained new employee David Ward ("Ward"), a young African-American male whom Plaintiff alleges is an "appropriate comparator" for purposes of his age discrimination claim. In October of 2011, Thompson was transferred back to first shift, and Ward assumed the duties for second shift Team Leader of the UT Group.

Plaintiff filed the present action on January 26, 2012, alleging the following claims: (1) race discrimination under Title VII and § 1981, (2) age discrimination under the ADEA, (3) hostile work environment under Title VII and § 1981, (4) retaliation under Title VII and § 1981, (5) retaliation and discrimination in violation of the FLSA, (6) breach of contract under Alabama law, and (7) breach of an implied-in-fact contract under Alabama law. (Doc. 1.)

Following discovery, Gestamp filed its Motion for Summary Judgment. After Plaintiff filed a response to Gestamp's Motion for Summary Judgment, Gestamp filed

a Motion requesting that this Court strike certain portions of Plaintiff's Response and accompanying evidentiary submission. (Doc. 25.) Before filing a response to that motion, Plaintiff filed a Motion for Protective Order (the "First Motion for Protective Order"), requesting that this Court decline to consider Gestamp's Motion to Strike (Doc. 28). Later, Gestamp filed a Reply to Plaintiff's Response, contemporaneously requesting permission to offer said Reply (Doc. 31), prompting Plaintiff to file a Second Motion for Protective Order, requesting that this Court decline to consider Gestamp's Reply Brief. (Doc. 22.)

III.    Preliminary Motions

    A.    Gestamp's Motion to Strike

    In his Motion for Protective Order, Plaintiff argues that a motion to strike is only appropriate as to pleadings, and not to evidentiary submissions outside the pleadings. Federal Rule of Civil Procedure 12(f) provides that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The law is not entirely clear on whether a court has broad powers to strike evidence or other non-pleadings, or if a court's power to strike is limited by Rule 12(f) to the pleadings. *Compare Reese v. Herbert*, 527 F.3d 1253, 1265, 1274 (11th Cir. 2008) (affirming district court's grant of a motion to strike an affidavit), *with Polite v. Dougherty Cnty. Sch. Sys.*, 314 F. App'x 180, 184 n.7 (11th

Cir. 2008) ("motions to strike are only appropriately addressed towards matters contained in the pleadings").

Some courts "have noted that evidence submitted in support of motions or pleadings may be 'challenged by motions to strike because the Federal Rules provide no other means to contest [its] sufficiency.'" *Morris v. Precoat Metals*, 2013 WL 830868, *2 (N.D. Ala. March 4, 2013) (quoting *Anderson v. Ga. Gulf Lake Charles, LLC*, 2008 WL 919716, *1 (W.D. La. Apr. 4, 2008)). Other courts have determined that "[t]he correct approach is to object to an opposing party's factual assertion on the ground that it 'cannot be presented in a form that would be admissible in evidence.'" *Norris v. GKN Westland Aerospace, Inc.*, 2013 WL 440755, *1 (M.D. Ala. Feb. 5, 2013) (quoting Fed. R. Civ. P. 56(c)(2)). When a court applying the latter approach is presented with a motion to strike material outside the pleadings, it "will construe this motion as a notice of objection." *Id.*

"Although the form of the [motion to strike] is not grounded in a federal procedural rule, the substance of the motion[] will be considered." *Stuckey v. Alabama Bd. Of Pardons and Paroles*, 2012 WL 3670644, *1 n.2 (M.D. Ala. Aug. 27, 2012). In deciding Gestamp's motion for summary judgment, the Court may consider the substance of Gestamp's motion to strike without actually striking the evidence submitted by Plaintiff. "Only evidence that is admissible on its face or that can be

reduced to admissible form and that complies with Federal Rule of Civil Procedure 56(e) will be considered in deciding a motion for summary judgment." *Id.* For this reason, Gestamp's Motion to Strike is due to be denied; however, the Court will consider the substance of the motion in deciding Gestamp's Motion for Summary Judgment.

B.     Plaintiff's First Motion for Protective Order

In his First Motion for Protective Order, Plaintiff argues that he is entitled to a protective order against the Court considering Gestamp's Motion to Strike for two reasons. The Court has already addressed his first argument—that a motion to strike is only appropriate as to pleadings. *See supra* Part III.A. Plaintiff's second argument is that Gestamp's Motion is an attempt to circumvent the ten-page reply brief limitation set out in this Court's Uniform Initial Order. (Doc. 6.) Regardless of whether it was permissible for Gestamp to move to strike Plaintiff's evidence, Gestamp still could have simply moved this Court for an extension of the page limitation. Plaintiff alleged nine pages of facts in his responsive brief that rely on evidence Gestamp contends is inadmissible. The ten-page limitation would not have been sufficient for Gestamp to refute Plaintiff's evidence and provide a reply to his substantive argument. The Court would have granted Gestamp an extension of the page limitation had it moved the Court for such relief. Moreover, Plaintiff was given an opportunity to respond to

Gestamp's Motion to Strike (Doc. 27), and did so. (Doc. 30.) Any inequities arising from Gestamp's additional brief was alleviated by Plaintiff's response. For these reasons, Plaintiff's First Motion for Protective Order is due to be denied.

C.     Gestamp's Permission Request and Plaintiff's Second Motion for Protective Order

In his Second Motion for Protective Order, Plaintiff requests that the Court decline to consider Gestamp's Reply to Plaintiff's Response to Motion to Strike. (Doc. 31.) Plaintiff argues that the briefing schedule did not give Gestamp leave to file his Reply brief. However, Gestamp did not file its Reply brief without contemporaneously requesting permission to offer the submission. In light of the fact that Gestamp was not given leave to provide a reply brief in the briefing schedule, the Court will deny Gestamp's request and decline to consider its submission. Accordingly, Plaintiff's Second Motion for Protective Order is moot.

IV.    Motion for Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).  The party moving for summary judgment "always bears the initial responsibility of informing the district

court of the basis for its motion, and identifying those portions of [the evidence] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant can meet this burden by presenting evidence showing that there is no genuine dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322–23. In evaluating the arguments of the movant, the court must view the evidence in the light most favorable to the nonmoving party. *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996).

Once the movant has met its burden, Rule 56(e) " requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " *Celotex*, 477 U.S. at 324 (quoting FED. R. CIV. P. 56(e)). " A factual dispute is genuine only if a 'reasonable jury could return a verdict for the nonmoving party.' " *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991)).

V.    Discussion

    A.    Discrimination Claims

Plaintiff alleges two types of discrimination: (1) race discrimination under Title VII and § 1981, and (2) age discrimination under the ADEA. Plaintiff alleges both claims of discrimination under the theory of disparate treatment. Liability in a disparate treatment case depends upon whether a plaintiff's race or age actually motivated the employer's decision, i.e., whether the employer had discriminatory intent. *See Raytheon Co. v. Hernandez*, 540 U.S. 44, 52 (2003) (race discrimination); *Ledbetter v. Goodyear Tire and Rubber Co., Inc.*, 421 F.3d 1169, 1182 (11th Cir. 2005) (age discrimination). "[A] plaintiff may use three different kinds of evidence of discriminatory intent: direct evidence, circumstantial evidence or statistical evidence." *Standard v. A.B.E.L. Services, Inc.*, 161 F.3d 1318, 1330 (11th Cir.1998) (race discrimination claim under Title VII and § 1981); *see also Sims v. MVM, Inc.*, 704 F.3d 1327, 1332 (11th Cir. 2013) ("A plaintiff can establish age discrimination through either direct or circumstantial evidence"). Plaintiff offers no direct or statistical evidence of employment discrimination, relying instead solely on circumstantial evidence.

In cases where the only evidence of discrimination is circumstantial, the court must "analyze the claim under the *McDonnell Douglas* framework, which requires the plaintiff to create an inference of discrimination through her *prima facie* case." *Springer v. Convergys Customer Management Group, Inc.*, 509 F.3d 1344, 1347 (11th Cir. 2007) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)) (race

discrimination); *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1088 (11th Cir. 2004) (age discrimination). Once a plaintiff establishes a *prima facie* case, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for its actions. *McDonnell Douglas*, 411 U.S. at 802; *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). If the employer meets this burden, the plaintiff must show that the proffered reasons were pretextual. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 511 (1993).

Although the *McDonnell Douglas* framework is one way of showing discriminatory intent, is not the only way in a Title VII, § 1981, or ADEA Discrimination claim. *See Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011) ("establishing the elements of the *McDonnell Douglas* framework is not, and never was intended to be, the *sine qua non* for a plaintiff to survive a summary judgment motion in an employment discrimination case"); *Sims*, 704 F.3d at 1333 (*Lockheed-Martin* used in age discrimination claim). According to the Eleventh Circuit, "[T]he plaintiff will always survive summary judgment if he presents circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent." *Id.* (citing *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997)).

       1.     Race Discrimination Under Title VII and § 1981

Plaintiff alleges racial discrimination based on two separate adverse employment decisions. First, he contends he was discriminated against when Gestamp discharged him for his violation of the "zero tolerance" policy. Second, he contends he was discriminated against when Gestamp denied him training opportunities that it afforded to others.

### a.   Discriminatory Discharge

#### i.   *Prima Facie* Case

Gestamp contends that Plaintiff has failed to make a *prima facie* case of racial discrimination. "To establish a *prima facie* case for disparate treatment in a race discrimination case, the plaintiff must show that: (1) [he] is a member of a protected class; (2) [he] was subjected to an adverse employment action; (3) [his] employer treated similarly situated employees outside of [his] protected class more favorably than [he] was treated; and (4) [he] was qualified to do the job." *Burke-Fowler v. Orange County, Fla.*, 447 F.3d 1319, 1323 (11th Cir. 2006) (citing *E.E.O.C. v. Joe's Stone Crab, Inc.*, 220 F.3d 1263, 1286 (11th Cir. 2000)).

Specifically, Gestamp alleges that Plaintiff cannot show an "appropriate comparator," i.e., a similarly situated, non-minority employee that his employer treated more favorably than he was treated. "To make a comparison of the plaintiff's treatment to that of non-minority employees, the plaintiff must show that he and the

employees are similarly situated in all relevant respects." *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997) (citations omitted). If this is not the case, "the different application of workplace rules does not constitute illegal discrimination." *Lathem v. Dep't of Children & Youth Servs.*, 172 F.3d 786, 793 (11th Cir. 1999) (citing *Nix v. WLCY Radio/Rahall Commc'ns*, 738 F.2d 1181, 1186 (11th Cir. 1984)). In order to be considered "similarly situated," the compared employees must have been "involved in or accused of the same or similar conduct," yet "disciplined in different ways" for that conduct. *Holifield*, 115 F.3d at 1562 (citations omitted).

### 1)   Kevin Childers

Plaintiff first argues that Childers is an appropriate comparator, offering as evidence to support his argument: (1) an outline he created during the EEOC investigation shortly after his termination (the "Outline") (Doc. 24-1), (2) his Response to Gestamp's First Interrogatories (the "Responses") (Docs. 24-2, 24-3, 24-5), and (3) Childers' disciplinary file (his "File"). (Doc. 24-9.) Gestamp challenges the admissibility of this evidence. (Doc. 25.) *See Corwin v. Walt Disney Co.*, 475 F.3d 1239, 1249 (11th Cir. 2007) (inadmissible evidence may not generally be considered at summary judgment).

Regarding the Outline, it is hearsay—Plaintiff is offering it as evidence to prove the truth of the matters asserted in the Outline, and it was not made while Plaintiff was

testifying. Fed. R. Evid. 801(c). As such, it is inadmissable unless another rule provides otherwise. Fed. R. Evid. 802. Plaintiff contends that the Outline falls under the "recorded recollection" exception. (Doc. 30, ¶ I.) This exception provides that, regardless of whether the declarant is available, a record is not excluded by the rule against hearsay if it "(A) is on a matter the witness once knew about but now cannot recall well enough to testify fully and accurately; (B) was made or adopted by the witness when the matter was fresh in the witness's memory; and (C) accurately reflects the witness's knowledge. If admitted, the record may be read into evidence but may be received as an exhibit only if offered by an adverse party." Fed. R. Evid. 803(5).

The Outline does not fall under the recorded recollection exception to hearsay. First and foremost, it is not being offered by Gestamp, the adverse party. Second, Plaintiff's deposition testimony demonstrates that he lacks actual knowledge of several of the assertions he makes in his outline. For example, the outline states that "Kevin [Childers] was given 1st shift over [Plaintiff] because of a technicality that management controlled." (Doc. 24-1, ¶ A.1.) However, in his deposition, Plaintiff admitted that he had no firsthand knowledge of why Childers received first shift, stating "[a]ll I can surmise is why I think he was given first shift over myself." (Pla. Depo. 136:18–137:1.)

Thus, several portions of the outline do not concern matters Plaintiff once knew about, and it does not accurately reflect his knowledge.

Despite not meeting the recorded recollection exception, the Outline may be considered if it could be reduced to admissible evidence at trial, such as by having Plaintiff testify. *See Pritchard v. S. Co. Servs.*, 92 F.3d 1130, 1135 (11th Cir. 1996) (noting that an affidavit "can be reduced to admissible form at trial" by calling the affiant as a witness). However, there is no indication that it can be reduced to admissible evidence. Every portion that may be based on personal knowledge is indistinguishable from portions based on rumor, speculation, and opinion. *See Evans v. McClain of Georgia, Inc.*, 131 F.3d 957, 962 (11th Cir. 1997). For these reasons, this Court will not consider the Outline as evidence in determining Gestamp's Motion for Summary Judgment.

Regarding the Responses, a party asserting that a fact is genuinely disputed may support the assertion by citing interrogatory answers. Fed. R. Civ. P. 56(c)(1)(A). However, the Rules are not clear on whether a party may use his own self-serving interrogatory answers at summary judgment. Several circuits have held he could not. *See Grace & Co. v. City of Los Angeles*, 278 F.2d 771, 776 (9th Cir. 1960) ("Normally, a party may not introduce his self-serving answers to an opponent's interrogatories."); *Lobel v. American Airlines*, 192 F.2d 217, 221 (2nd Cir. 1951). However, one circuit

court recently found that "a person answering an interrogatory can testify competently at trial to the information contained in her answers so long as she has personal knowledge of such information." *Johnson v. Holder*, 700 F.3d 979, 982 (7th Cir. 2012). In light of this, it would be improper for the Court to summarily reject the Responses as inadmissible evidence.

Indeed, even though a party's own answers to interrogatories are hearsay, if they are based on personal knowledge then they could still be reduced to admissible evidence at trial, and it would be proper for this Court to consider them at summary judgment. However, if they are not based on personal knowledge, then it is impossible to reduce them to admissible evidence. *See* Fed. R. Evid. 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."). Furthermore, if the Responses have been contradicted by Plaintiff's deposition testimony, they cannot be considered by this Court. *See Jones v. UPS Ground Freight*, 683 F.3d 1283, 1294 (11th Cir. 2012) ("If, however, the declarant has given sworn testimony during the course of discovery that contradicts the hearsay statement, we may not consider the hearsay statement at the summary judgment phase.").

Gestamp challenges several statements individually in the Responses as inadmissible. The first statement Plaintiff offers as evidence that Childers is an

appropriate comparator is Plaintiff's assertion that he was terminated for the same alleged offense that Childers regularly committed. (Doc. 23, ¶ 9.) However, in his deposition testimony Plaintiff admits that he was not certain whether Childers had permission to leave. (Pla. Depo. 88:17–89:21.) Thus, he did not have personal knowledge of whether Childers committed the same offense he is charged with committing. This statement is inadmissible at trial in that it cannot be reduced to admissible evidence, and thus has no probative value.

The second statement Plaintiff relies on is his assertion that the second shift had to work longer and harder to make up for the inefficiency of the first shift, led by Childers. (*Id.*, ¶ 10.) In his deposition, Plaintiff admits that he does not have personal knowledge of whether this statement is true. (Pla. Depo. 206:18–207:13.) Thus, the Court will not rely on it because it is inadmissible at trial and cannot be reduced to admissible evidence.

The final statement from the Responses is Plaintiff's assertion that "Childers committed a number of violations of company policy that generally went undisciplined." (Doc. 23, ¶ 11.) In his opposition brief, Plaintiff never cites to any evidence outside the Responses to show his basis of personal knowledge regarding this assertion. Moreover, in his response to Gestamp's Motion to Strike, Plaintiff argues that these assertions "are confirmed by his and others' testimony, which Plaintiff

presented in great detail in the response to the motion for summary judgment." (Doc. 30, ¶ II.) Even if these assertions are confirmed by other evidence, this does not cure the inadmissibility of the evidence Plaintiff actually offers to support his assertion.[4]

Furthermore, the Court is only required to consider cited materials in determining a motion for summary judgment. Fed. R. Civ. P. 56(c)(3). The Court will not "comb the record of previously available evidence and make a party's case for it." *Adler*, 144 F.3d at 672. Instead, the Court will consider statements in the Responses if it is self-evident that Plaintiff has personal knowledge of what the statement asserts and the statement is not hearsay. This only includes the statements that Childers Playing on the computer "was part of the original complaint to management" (Doc. 24-3, ¶ 11.2.d), and Childers "smokes constantly in the back area of the cut and etch lab." (*Id.*, ¶ 11.2.g.)

Regarding Childers' File, there are only two violations in it. The first is when Childers' was caught texting on his cell phone in front of his Associates while on the clock. (Doc. 24-9 at 1.) The second is when Childers admitted to Morgan that he smoked marijuana. (*Id.* at 3.)

---

[4]For example, it is self-evident that several of the statements made in the Responses are clearly inadmissible hearsay, such as the statement that "[t]hey said when they came through the door he was startled and clicked off the computer like he was doing something wrong." (Doc. 24-3, ¶ 11.2.c.) Other statements are made without the Plaintiff having personal knowledge, such as the statement that "1st shift associate (Ron White) caught Kevin asleep in January of 2011 in the cut and etch lab." (Id., ¶ 11.2.b.) These statements are inadmissible hearsay and cannot be reduced to admissible evidence because they are not based on Plaintiff's personal knowledge.

After taking the inadmissible evidence out of consideration, it is clear that Childers was not involved in or accused of the same or similar conduct as that which resulted in Plaintiff's termination. The violations Plaintiff can show that Childers committed are playing on his computer (Doc. 24-3, ¶ 11.2.d), smoking in a place that is "not a designated smoke area" (*Id.*, ¶ 11.2.g), texting on his cell phone (Doc. 24-9 at 1), and violating the company's drug policy. (*Id.* at 3.) None of these violations are similar to Plaintiff's violation of leaving Gestamp's facility without permission during work hours and being away from his work area excessively. (Doc. 18, ¶ 10.) For these reasons, Childers is not an appropriate comparator to Plaintiff.

### 2)   Kristopher Thompson

Next, Plaintiff argues that Thompson, his immediate replacement, is an appropriate comparator because he "committed prior company violations that rendered him unfit to replace Plaintiff, including fraternization with an associate, allowing bad parts to get to MBUSI, and walking out on his job." (Doc. 23 at 14–15.) Gestamp argues that the portions of the Responses Plaintiff relies on for this statement are inadmissible because Plaintiff lacks personal knowledge. (Doc. 25, ¶ II.A.5.) Indeed, Plaintiff admits that he has no firsthand knowledge of Thompson's alleged fraternization with an associate (Pla. Depo. 215:18–216:6), and no firsthand knowledge of Thompson allowing bad parts to get to MBUSI. (*Id.* 217:1–5.) Further, it is clear that

he was not present when Thompson allegedly walked out on his job, so Plaintiff has no firsthand knowledge of that event either. (Doc. 24-4 at 4.) Accordingly, the Court will not rely on such evidence in determining Gestamp's Motion for Summary Judgment.

The only admissible evidence Plaintiff cites is Thompson's disciplinary file (his "File"). (Docs. 24-10, 24-11.) There are two types of violations that are mentioned in his File. The first relates to Thompson's job performance. These violations include initialing a wrongly-labeled tote on February 3, 2009 (Doc. 24-11 at 5–6), signing two mislabeled racks that made it to MBUSI on May 25, 2010 (Doc. 24-10 at 5–7), and signing a rack without checking it on December 15, 2011. (*Id.* at 1–2.) None of these violations are "zero tolerance" violations, nor are they similar to Plaintiff's violation of leaving Gestamp's facility without permission during work hours and being away from his work area excessively. (Doc. 18, ¶ 10.) Thus, Thompson cannot be considered similarly situated based on these violations.

The second type of violation in the File relates to Thompson's attendance. These violations include clocking in nineteen minutes late on November 5, 2009 (Doc. 24-11 at 3–4), arriving late and leaving early on March 10, 2010 (*Id.* at 1–2), and leaving early on September 28, 2011. (Doc. 24-10 at 3–4.) As a whole, these violations are not similar to Plaintiff's violations because they occurred much less frequently. Plaintiff committed three such violations in a two week period, whereas Thompson committed

three such violations in a two year period. Further, unlike Plaintiff, Thompson has not committed the "zero tolerance" violation of "excessive unauthorized absence from workstation during the workday." (Morgan Aff'd, ¶ 7.) Thompson is not an appropriate comparator to Plaintiff.

### 3)   Greg Lucas

Finally, Plaintiff argues that Greg Lucas, who was laid off by Gestamp but later offered a job shortly before Plaintiff's termination, is an appropriate comparator. (Doc. 23 at 16.) Nowhere in Plaintiff's responsive brief (*id.*), or in the Declaration of Greg Lucas (Doc. 24-12), is it asserted that Lucas was involved in or accused of the same or similar conduct as Plaintiff, or that Lucas was disciplined in different ways for any conduct. Thus, Lucas is not an appropriate comparator to Plaintiff.

Plaintiff has failed to show any appropriate comparator. Accordingly, he has failed to meet his burden of demonstrating a *prima facie* case of disparate treatment in his race discrimination case based on his termination.

### ii.    Legitimate, Non-Discriminatory Reasons

Assuming, *arguendo*, that Plaintiff met his burden of demonstrating a *prima facie* case, the burden would then shift to Gestamp to articulate a legitimate, non-discriminatory reason for its actions. *McDonnell Douglas*, 411 U.S. at 802; *Burdine*, 450 U.S. at 253. Gestamp contends that "Morgan made the decision to discharge

Plaintiff because she concluded he violated the Zero Tolerance Policy when, without permission, he left Gestamp's facility during work hours and was away from his work area excessively." (Doc. 18, ¶ 10.) Accordingly, Gestamp has articulated a legitimate, non-discriminatory reason for terminating Plaintiff, and Plaintiff must now show that the proffered reason was pretextual. *Hicks*, 509 U.S. at 511.

### iii.   Pretext

To establish pretext, Plaintiff must "demonstrate that the proffered reason was not the true reason for the employment decision" and may demonstrate this either "directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Jackson v. State of Ala. State Tenure Comm'n*, 405 F.3d 1276, 1289 (11th Cir. 2005) (quoting *Burdine*, 450 U.S. at 256). When determining whether an employer's proffered reason for terminating the employee was pretextual, it is the motive of the decisionmaker—Morgan in this case—in discharging the employee that is at issue. *See Jones v. Gerwens*, 874 F.2d 1534, 1541 (11th Cir. 1989).

### 1)   Demonstrating Pretext Directly

Plaintiff cites no evidence that could persuade the Court that a discriminatory reason more likely motivated Morgan in terminating Plaintiff than Gestamp's proffered reason. The investigation was initiated by Morgan when another employee

had trouble locating Plaintiff (Morgan Aff'd, ¶ 13), and Plaintiff cannot show that Morgan is treating Plaintiff differently than any other employee. Plaintiff points to the fact that Thompson and Childers were never subjected to the same investigation he was, despite violations in their disciplinary files, as evidence that Gestamp's reason for Plaintiff's termination was a pretext. However, Childers' violations that Morgan knew about did not involve absences and occurred infrequently, and Thompson's violations that Morgan knew about occurred very infrequently. (*See* Doc. 24-9.) Thus, there is no evidence that Morgan herself was motivated by discriminatory animus.

Based on the Supreme Court's decision in *Staub v. Proctor Hosp.*, Plaintiff argues that all he has to show is that an act motivated by discriminatory animus was a proximate cause of his termination. 131 S.Ct. 1186, 1193 (2011) (" [I]f a supervisor performs an act motivated by antimilitary animus that is intended by the supervisor to cause an adverse employment action, and if that act is a proximate cause of the ultimate employment action, then the employer is liable under [the Uniformed Services Employment and Reemployment Rights Act]." ). *Staub* dealt with a statute that is "very similar to Title VII," *id.* at 1191, so the Supreme Court's holding is instructive in this case.

In *Staub*, there was evidence that the supervisors' actions that led to the plaintiff's termination were motivated by hostility toward the plaintiff's military

obligations. *Id.* at 1194. One supervisor stated that she was trying to get rid of the plaintiff, and the other supervisor was aware of this. *Id.* In this case, there is no evidence that the employees who investigated Plaintiff were motivated by hostility toward Plaintiff's race. Plaintiff has presented no evidence that Stallworth or Nelson—the employees who Morgan requested help from—were motivated by discriminatory animus in their investigation of Plaintiff. Further, no evidence has been presented that Green, who was asked by Nelson to monitor Plaintiff and report his findings, was motivated by discriminatory animus.

Plaintiff contends that Weinrick, who sent an e-mail to Morgan after he aided Stallworth in his investigation of Plaintiff, demonstrated racial animus. There are two problems with this contention. First, Weinrick was not asked by anyone to provide a report on Plaintiff, but did so independently after aiding Stallworth in his investigation. There were several other reports Morgan received, all substantially similar to Weinrick's e-mail, and she would have reached the same conclusion whether she considered Weinrick's e-mail or not. Thus, the e-mail—an act allegedly motivated by discriminatory animus— was not a proximate cause of Plaintiff's termination.

Second, Plaintiff cannot actually demonstrate that Weinrick was motivated by discriminatory animus. Plaintiff contends that Weinrick demonstrated racial animus by (1) awarding jobs to white workers without posting jobs so that they were available

to workers of all races (Pla. Depo. 234:4–235:4), (2) singling out Lacy Anderson, a white female employee, because of her interracial relationships (*id.* 235:11–236:3), (3) getting into an argument and raising his voice to Plaintiff (*id.* 189:23–190:4), and (4) his constant surveillance of Plaintiff. (*Id.* 187:10–14.)

Half of Plaintiff's evidence is inadmissible because it is not based on personal knowledge. He was told by people in assembly that Weinrick was awarding jobs to "whoever instead of giving to the people who was from the workers" (*id.* 239:11–15, 240:11–241:9), and he was told by Anderson that Weinrick was harassing her by making comments about her job performance (*id.* 235:11–236:14), but he does not have personal knowledge of these events. This evidence is inadmissible, cannot be reduced to admissible evidence, and should not be considered by the Court at summary judgment. *See Evans*, 131 F.3d at 962.

The other half of Plaintiff's evidence is based on pure speculation of Weinrick's motives. These facts are entirely different than the facts of *Staub*, where no speculation about the supervisor's motives was necessary because the supervisor admitted that she was out to get the plaintiff. After disregarding the inadmissible evidence, Plaintiff cannot show that Weinrick was motivated by racial animus. Accordingly, Plaintiff cannot demonstrate pretext directly.

2)   Demonstrating Pretext Indirectly

Plaintiff cites no evidence showing that Gestamp's proffered explanation is unworthy of credence. First, Plaintiff argues that he received permission from his supervisors to stack breaks under certain circumstances, so Gestamp's articulated reason for terminating him is not legitimate. Although it may be true that Plaintiff received permission to stack his breaks from both Norwood and Herrera shortly after being hired, neither manager was in a position to give Plaintiff permission to stack his breaks when he was investigated. Plaintiff would have needed either Crawford or Nelson's permission to stack breaks, and it is undisputed that he had neither manager's permission. Further, Morgan never gave him permission stack breaks, even though he informed her of it when complaining about clock issues after she had completed her investigation.

Second, Plaintiff argues that the reason given for his discharge is suspect because Gestamp "waste[d] two months, almost three months doing an investigation instead of just coming as management and telling me or addressing the issue." (Pla. Depo. 177:2–6); (Doc. 23 at 20.) Although the investigation only lasted two weeks, this Court is not concerned with whether Gestamp's decision to terminate Plaintiff was prudent or fair, only with whether unlawful discriminatory animus motivated the decision. *Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1266 (11th Cir. 2010). The fact that Gestamp wasted the company's time investigating Plaintiff when it could

have addressed Plaintiff directly does not show that their explanation is unworthy of credence. Accordingly, Plaintiff has not met his burden of showing that Gestamp's proffered reasons for terminating him were pretextual. Consequently, Plaintiff has not satisfied the *McDonnell Douglas* framework.

### iv.   Other Circumstantial Evidence

Plaintiff argues that even if he cannot satisfy the *McDonnell Douglas* framework, he can still show discriminatory intent under *Lockheed-Martin*. According to the Eleventh Circuit, "the plaintiff will always survive summary judgment if he presents circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent." *Lockheed-Martin*, 644 F.3d at 1328. (citing *Holifield*, 115 F.3d at 1562). "A triable issue of fact exists if the record, viewed in a light most favorable to the plaintiff, presents 'a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker.'" *Lockheed-Martin*, 644 F.3d at 1328 (quoting *Silverman v. Bd. of Educ.*, 637 F.3d 729, 734 (7th Cir. 2011) (citations and internal quotation marks omitted)). Such a "convincing mosaic" was present in that case where there was an extensive documented history of disparate treatment of African-American and Caucasian employees and a spreadsheet matrix listing several employees by name and race that the defendant's disciplinary review committee used to make discipline decisions.

Plaintiff cites several pieces of circumstantial evidence from which he contends a jury could infer intentional discrimination by Gestamp. The Court has already determined that some of this evidence, such as Plaintiff's outline, is inadmissible. *See Supra* Part V.A.1.a.i.1. Other evidence includes reports of an investigation initiated by Morgan regarding the observed absence of the second shift (Doc. 24-8), the lack of scrutiny Childers was subjected to compared with Plaintiff (Doc. 24-9; Pla Depo 90:5–12, 164:8–165:9, 193:3–197:8), and Plaintiff's contention that for the last year and a half "the first shift was all white and the second was all black." (Doc. 23 at 16); (Pla. Depo. 137:19–22.)

This evidence does not create a "convincing mosaic of circumstantial evidence" for several reasons. First, Plaintiff cites no evidence that would allow a jury to infer intentional discrimination by Morgan, the decisionmaker, in implementing the investigation. As previously mentioned, there is no evidence that Morgan made her decision with racial animus, or that racial animus influenced her decision through the reports she relied on. *See supra* Part.V.A.1.a.iii.1. Second, Plaintiff's contention that the first shift was all white and the second shift was all black is not based on personal knowledge. (*See* Pla. Depo. 139:8–21.) Third, Plaintiff has shown no evidence of a history of disparate treatment of Caucasian and African-American employees, or that Plaintiff's race was brought up during the investigation. Finally, Plaintiff has shown

no evidence that Morgan was aware of Childers alleged constant absence from his workstation. Even if Childers wasn't subject to the same scrutiny as Plaintiff, this falls well short of a "convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker." *Lockheed-Martin*, 644 F.3d at 1328 (internal quotation marks omitted).

### b.   Discriminatory Treatment Based on Training Denial

Gestamp argues that Plaintiff's Race Discrimination claim based on his denial of training opportunities fails as a matter of law because Plaintiff cannot make a *prima facie* case of disparate treatment. Specifically, Gestamp contends that Plaintiff cannot show that there was an adverse employment action, or that there are any "appropriate comparators."

### i.   Adverse Employment Action

First, Gestamp contends that Plaintiff has no evidence that he suffered an adverse employment action. An adverse employment action is a "serious and material change in the terms, conditions, or privileges of employment. Moreover, the employee's subjective view of the significance and adversity of the employer's action is not controlling; the employment action must be materially adverse as viewed by a reasonable person in the circumstances." *Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1239 (11th Cir. 2001). An adverse employment action based on a denial of

training is actionable only if the plaintiff can establish that the employer denied material training opportunities to him. *See Turlington v. Atlanta Gas Light Co.*, 135 F.3d 1428, 1435 n.16 (11th Cir. 1998).

Plaintiff argues that the training he was denied was so valuable that he was willing to come in on Saturdays to gain it. (Doc. 23 at 17.) However, Plaintiff's subjective opinion that the denial of training was significant does not control this Court's decision. Plaintiff does not cite any evidence showing that training was material. He only speculates that it made Childers "the most valuable asset in the UT department." (Pla. Depo. 166:11–18.) Further, Plaintiff does not point to any specific opportunities he was not offered due to his lack of training. Accordingly, Plaintiff cannot show that his denial of training was an adverse employment action, and Plaintiff cannot prove a *prima facie* case of disparate treatment based on his denial of training.

ii.    Similarly Situated Comparator

Second, Gestamp contends that Plaintiff cannot show that it treated similarly situated, non-minority employees more favorably than he was treated. "To make a comparison of the plaintiff's treatment to that of non-minority employees, the plaintiff must show that he and the employees are similarly situated in all relevant respects." *Holifield*, 115 F.3d at 1562 (citations omitted). If this is not the case, "the different

application of workplace rules does not constitute illegal discrimination." *Lathem*, 172 F.3d at 793.

Plaintiff argues that Childers is an appropriate comparator because he received advanced training that prepared him for the higher position of group leader, whereas Plaintiff was denied such opportunities. (Doc. 23 at 17.) Childers, however, works on a different shift than Plaintiff, with different job duties. Further, the training Plaintiff did not receive involved job duties performed on Childers' shift, but not Plaintiff's shift. (Doc. 97:19–98:23.) Plaintiff contends that any difference in situation between he and Childers was brought about because Childers was allowed special training, while Plaintiff was denied similar training; however, he does not cite any admissible evidence to support this contention. Thus, Childers is not similarly situated to Plaintiff because he works on a different shift, and the training involved job duties that were only performed on his shift. Accordingly, Childers cannot be considered an apporpriate comparator to Plaintiff, and Plaintiff cannot prove a *prima facie* case of disparate treatment based on his denial of training.

### 2.   Age Discrimination Under the ADEA

The ADEA prohibits employers from discharging an employee who is at least 40 years of age because of that employee's age. 29 U.S.C. §§ 623(a)(1), 631(a). The ADEA provides, in relevant part, that " [i]t shall be unlawful for an employer . . . to fail

or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." *Id.* § 623(a)(1). In *Gross v. FBL Financial Services, Inc.*, 557 U.S. 167, 176 (2009), the Supreme Court held that the language "because of" in the ADEA statute means that a plaintiff must prove that discrimination was the "but-for" cause of the adverse employment action. *See id.* ("To establish a disparate-treatment claim under the plain language of the ADEA, therefore, a plaintiff must prove that age was the 'but-for' cause of the employer's adverse decision."); *see also id.* (explaining that the claim "cannot succeed unless the employee's protected trait actually played a role in [the employer's decision-making] process and had a determinative influence on the outcome") (citing Hazen Paper Co. v. Biggins, 507 U.S. 604, 610, 113 S.Ct. 1701, 1706, 123 L.Ed.2d 338 (1993)).[5]

### a.   *Prima Facie* Case

"In order to make out a *prima facie* case for an ADEA violation, the plaintiff must show that he (1) was a member of the protected age group, (2) was subject to adverse employment action, (3) was qualified to do the job, and (4) was replaced by a

---

[5]The Eleventh Circuit recently determined that evaluation of ADEA claims based on circumstantial evidence under the *McDonnell Douglas* framework is consistent with the Supreme Court's decision in *Gross. Sims*, 704 F.3d at 1332–33 (finding the *McDonnell Douglas* framework consistent with *Gross* because the burden of production shifts to the defendant, but the burden of persuasion remains at all times with the plaintiff); *Gross*, 557 U.S. at 175 n.2 ("[T]he Court has not definitively decided whether the evidentiary framework of [ *McDonnell Douglas*] utilized in Title VII cases is appropriate in the ADEA context.").

younger individual." *Williams v. Vitro Services Corp.*, 144 F.3d 1438, 1444 (11th Cir. 1998) (emphasis added). Plaintiff has put forth evidence that he was above forty years of age at the relevant time (Pla. Depo. 10:10–12), he was terminated (*id.* 20:23–21:12), he was qualified for the second shift UT Group Team Leader position (undisputed by Gestamp), and he was replaced by Thompson, a younger individual. (Doc. 24-6, Response No. 8.) Accordingly, he has satisfied his *prima facie* case.

### b.      Legitimate, Non-Discriminatory Reason

As previously mentioned, Gestamp has articulated a legitimate, non-discriminatory reason for its actions by stating that " Morgan made the decision to discharge Plaintiff because she concluded he violated the Zero Tolerance Policy when, without permission, he left Gestamp's facility during work hours and was away from his work area excessively." (Doc. 18, ¶ 10); *See supra* Part V.A.1.a.ii. Accordingly, Plaintiff must now show that the proffered reasons were pretextual. *Hicks*, 509 U.S. at 511.

### c.      Pretext

Gestamp argues that Plaintiff cannot show that its reason for terminating him was not the true reason, referring to its discussion of Plaintiff's racial discrimination claim. (Doc. 18 at 16.) Plaintiff argues that Gestamp's reason for terminating him was

pretext for discrimination, and likewise refers to his discussion of his racial discrimination claim. (Doc. 23 at 22.).

First, Plaintiff cites no evidence that could persuade the Court that a discriminatory reason more likely motivated Morgan in terminating Plaintiff than the proffered reason. Plaintiff points to the fact that Thompson, Plaintiff's younger replacement, was never subjected to the same investigation—despite violations in his disciplinary files—as evidence that Gestamp's reason for Plaintiff's termination was a pretext. However, Thompson's violations that Morgan knew about occurred very infrequently compared with Plaintiff's violations. (*See* Doc. 24-9.)

Plaintiff alleges that Morgan made comments indicating that she was well aware of Plaintiff's advanced age. (Doc. 23, ¶ 54.) The only comments Morgan made regarding Plaintiff's age were compliments such as " [y]ou look great for your age." (Pla. Depo. 236:17–237:9.) This is not sufficient to persuade the Court that a discriminatory reason *more likely* motivated Morgan than the articulated reason.

Plaintiff also contends that Thompson and Ward, a younger individual who eventually took over Plaintiff's job duties, were not qualified for the second shift Team Leader position, and this is evidence of pretext. According to Plaintiff, Thompson was not qualified because he was demoted when he came into Plaintiff's department, and

Ward was not qualified because he was not level-1 or level-2 certified. (Doc. 23, ¶ 52.)[6] However, Plaintiff admits that he has no personal knowledge of whether Thompson was actually demoted, or whether Ward was not actually level-1 or level-2 certified at the time he became second shift Team Leader, and is only relying what he was told by others. (Pla. Depo. 179:15–180:15, 216:7–18.)  Thus, his evidence of Thompson and Ward's lack of qualification is inadmissible, cannot be reduced to admissible evidence at trial because Plaintiff does not have personal knowledge, and will not be considered by this Court. As such, there is no evidence that Morgan herself was motivated by discriminatory animus in terminating Plaintiff.

Second, Plaintiff cites no evidence that could persuade the Court that Morgan's explanation for terminating Plaintiff is unworthy of credence. *See supra* Part V.A.1.a.iii.2. Accordingly, Plaintiff has not met his burden of showing that Gestamp's proffered reasons for terminating him were pretextual. Consequently, Plaintiff has not satisfied the *McDonnell Douglas* framework.

B.      Hostile Work Environment Under Title VII and § 1981

" [W]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult[ ] that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is

---

[6] Plaintiff does not explain the relevance of level-1 or level-2 certification, but this Court will assume that it is very important to an Associate's qualifications as a Team Leader.

violated." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002) (internal quotation marks omitted). "The same is true under § 1981." *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1292 (11th Cir. 2012) (citing *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1300 (11th Cir. 2010)). In order to prove that an employer is liable for a racially hostile work environment under Title VII and § 1981, a plaintiff must show that:

> (1) he belongs to a protected group; (2) he was subjected to unwelcome harassment; (3) the harassment was based on his membership in the protected group; (4) it was severe or pervasive enough to alter the terms and conditions of employment and create a hostile or abusive working environment; and (5) the employer is responsible for that environment under a theory of either vicarious or direct liability.

*Jones*, 683 F.3d at 1292 (quotation marks omitted).

1.    Race-Based Harassment

Gestamp contends that Plaintiff cannot show race-based harassment. Plaintiff's hostile work environment claim seems to be based on a few separate events: (1) the investigation of Plaintiff initiated by Morgan and performed by Weinrick, Jake Johnson, and Derrick Stallworth, (2) Jake Johnson making disparaging remarks to Plaintiff, (3) an argument between Weinrick and Plaintiff where Weinrick raised his voice, and (4) management's refusal to take Plaintiff's complaints of harassment. (Pla. Depo. 181:7–185:21.)

Plaintiff has cited no evidence that these events were in any way motivated by Plaintiff's race. As previously mentioned, the investigation was initiated because

another employee could not locate Gestamp during his shift (Morgan Aff'd, ¶ 13), and Plaintiff cannot show that Morgan treated Plaintiff differently than any other employee or was motivated by racial animus in initiating the investigation. *See supra* Part V.A.1.a.iii.1. The argument between Weinrick and Plaintiff occurred because Weinrick accused Plaintiff's associates of harassing one of his associates (Pla. Depo. 114:18–115:14), and nothing racist was said. (*Id.* 114:18–117:8.) Plaintiff has made no showing that Weinrick was motivated by racial animus in his argument with Plaintiff, or his surveillance of Plaintiff. *See supra* Part V.A.1.a.iii.1. Plaintiff cites no evidence of any specific disparaging remark that could be construed as racist from anyone, and no evidence that Gestamp's management's alleged refusal to consider his harassment complaint was due to his race. Accordingly, Plaintiff cannot show race-based harassment and, consequently, cannot bring a hostile work environment claim.

2.    Severe or Pervasive Conduct

Gestamp argues that, even if Plaintiff could show race-based harassment, he cannot show that the conduct was severe or pervasive enough to alter the terms and conditions of employment and create a hostile or abusive working environment. " ' The determination of whether race-based harassment was so severe or pervasive as to alter the conditions of employment includes both subjective and objective components.' " *Jones*, 683 F.3d at 1299 (quoting *EEOC v. Xerxes Corp.*, 639 F.3d 658, 676 (4th Cir.

2011)). " The burden is on the plaintiff to demonstrate that he perceived, and that a reasonable person would perceive, the working environment to be hostile or abusive." *Id.* At summary judgment, the Court must accept that Plaintiff subjectively perceived that the harassment rose to this level. *Id.*

In determining whether a reasonable person would perceive the working environment to be hostile or abusive, a court must " look to 'all the circumstances,' including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it reasonably interferes with an employee's work performance.' " *Morgan*, 536 U.S. at 116 (quoting *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 23 (1993)).

In this case, Plaintiff was yelled at once by Weinrick, occasionally suffered a disparaging remark, was under constant surveillance, and was denied an opportunity to complain about Weinrick. Most of the allegedly discriminatory conduct occurred infrequently—one incident with Weinrick, one incident where management would not consider Plaintiff's complaint, and an occasional disparaging remark. The only frequent conduct—Plaintiff's constant surveillance—was not severe enough to interfere with Plaintiff's work performance. (Pla. Depo. 186:12–187:4.) Under these facts, a reasonable person could not find the kind of severe or pervasive conduct necessary to bring a hostile work environment claim.

C.      Retaliation Under Title VII and § 1981

"Retaliation against an employee who engages in statutorily protected activity is barred under both Title VII and § 1981." *Chapter 7 Trustee v. Gate Gourmet, Inc.*, 683 F.3d 1249, 1257–58 (11th Cir. 2012) (citing 42 U.S.C. § 2000e–3(a); *CBOCS W., Inc. v. Humphries*, 553 U.S. 442, 457 (2008) (concluding that § 1981 encompasses retaliation claims)). "A plaintiff establishes a *prima facie* case of retaliation by showing that: (1) she 'engaged in statutorily protected activity'; (2) she 'suffered a materially adverse action'; and (3) 'there was a causal connection between the protected activity and the adverse action.'" *Gate Gourmet*, 683 F.3d at 1258 (citing *Howard v. Walgreen Co.*, 605 F.3d 1239, 1244 (11th Cir. 2010)) (emphasis added).

1.      Statutorily Protected Activity

Gestamp argues that Plaintiff cannot show that he engaged in statutorily protected conduct. To do this, Plaintiff "must show that [he] 'had a good faith, reasonable belief that the employer was engaged in unlawful employment practices.'" *Weeks v. Harden Mfg. Corp.*, 291 F.3d 1307, 1312 (11th Cir. 2002) (quoting *Little v. United Tech., Carrier Transicold Div.*, 103 F.3d 956, 960 (11th Cir. 1997)). The Eleventh Circuit has described this standard as follows:

> It is critical to emphasize that a plaintiff's burden under this standard has both a subjective and an objective component. A plaintiff must not only show that he *subjectively* (that is, in good faith) believed that his employer was engaged in unlawful employment practices, but also that his belief

> was *objectively* reasonable in light of the facts and record presented. It thus is not enough for a plaintiff to allege that his belief in this regard was honest and bona fide; the allegations and record must also indicate that the belief, though perhaps mistaken, was objectively reasonable.

*Little*, 103 F.3d at 960.

The employment practices Plaintiff complained about, or attempted to complain about, that he believed were unlawful under Title VII and § 1981 include: (1) an argument between Weinrick and Plaintiff where Weinrick raised his voice to Plaintiff (Pla. Depo. 189:23–190:4), (2) the investigation of Plaintiff initiated by Morgan and performed by Weinrick, Jake Johnson, and Derrick Stallworth (*id.* 187:10–14), (3) the lack of manpower on second shift (*id.* 191:9–20), and (4) Childers' lack of work and leadership as first shift team leader. (*Id.*)

While Plaintiff may satisfy the subjective component of the test because he thought Weinrick was a racist (*id.* 121:10–17), his belief is not objectively reasonable in light of the facts of this case. Weinrick raised his voice because he thought Plaintiff's associates were harassing one of his associates (*id.* 114:18–115:14), but nothing racist was said. (*Id.* 114:18–117:8.) Plaintiff has presented no evidence from which a reasonable person could conclude that Weinrick acted with racial animus, or that the investigation was conducted or motivated by racial animus and violated Title VII or § 1981. *See supra* Part V.A.1.a.iii.1.

Plaintiff seems to believe that management's refusal to do anything about the lack of manpower on second shift and Childers' lack of work and leadership is a Title VII and § 1981 violation, but he has presented no admissible evidence indicating that these conditions could violate Title VII or § 1981. He only points to the fact that Crawford wouldn't talk to the first shift Associates because he didn't want them to "throw Kevin [Childers] underneath the bus." (Pla. Depo. 165:7–9.) There is no racial animus in this statement. Accordingly, a reasonable person could not conclude that management's refusal to do anything regarding Plaintiff's complaints violates Title VII or § 1981.

### 2.   Causal Connection

Finally, Plaintiff cannot show that there was a causal connection between the protected activity and the adverse action. He has not produced any admissible evidence that Morgan, the Manager who made the decision to terminate Plaintiff, was aware of Plaintiff's complaints about Childers or the lack of manpower on second shift. Further, Nelson's comment that people might lose their jobs if Plaintiff went through with his complaint was made after Morgan had already conducted her investigation of Plaintiff and began to train his replacement. (Doc. 23, ¶ 45.) Thus, it cannot be evidence of a causal connection because the decision was already made. Accordingly, Plaintiff cannot show retaliation under Title VII and § 1981.

D.    Retaliation and Discrimination in Violation of the FLSA

Plaintiff claims that Gestamp retaliated and discriminated against him in violation of the FLSA because of his complaints regarding malfunctioning time clocks. The FLSA provides that "it shall be unlawful for any person . . . to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to [the FLSA]." 29 U.S.C. § 215(a)(3). "A *prima facie* case of FLSA retaliation requires a demonstration by the plaintiff of the following: '(1) she engaged in activity protected under [the] act; (2) she subsequently suffered adverse action by the employer; and (3) a causal connection existed between the employee's activity and the adverse action.'" *Wolf v. Coca-Cola Co.*, 200 F.3d 1337, 1342–43 (11th Cir. 2000) (quoting *Richmond v. ONEOK, Inc.*, 120 F.3d 205, 208–09 (10th Cir. 1997)) (emphasis added).

Gestamp argues that there is no causal connection between the discrimination or retaliation and Plaintiff's complaints. Although it appears that Plaintiff's complaints regarding malfunctioning time clocks involve wage and hour issues, he has presented absolutely no evidence that he was terminated because of his complaints involving wage and hour issues. In fact, Plaintiff received pay adjustments when he found an error in his time worked (Morgan Aff'd, ¶ 20), and Morgan had already determined that Plaintiff violated Gestamp's "Zero Tolerance" policy at the time he made his

complaints, and was training his replacement. (Morgan Aff'd, ¶ 13.i.) Plaintiff was terminated because he spent too much unauthorized time away from the Gestamp facility (*id*.), not because he had issues clocking in and out, and sought his pay for the time he worked. As such, Plaintiff cannot establish a causal connection between his termination or discrimination and his complaints. Plaintiff's contention that other employees took extended breaks but received no discipline (Brown Aff'd; Martin Aff'd), is immaterial because he presents no evidence that Morgan, the decisionmaker, knew about these alleged violations when she made the decision to terminate Plaintiff. Accordingly, Plaintiff cannot show retaliation and discrimination under the FLSA.

E.    Breach of Contract Claims Under Alabama Law

Plaintiff claims that Gestamp breached either an express contract or an implied-in-fact contract. Gestamp argues that Plaintiff cannot prove his breach of contract claims—either express or implied—because he cannot prove that there was any contract between the parties regarding stacking his breaks. Proof of a contract is a necessary element in both breach of contract and breach of an implied contract claim. *See Southland Bank v. A & A Drywall Supply Co., Inc.*, 21 So. 3d 1196, 1203–04 (Ala. 2008). Plaintiff failed to brief his opposition to Gestamp's Motion for Summary Judgment as to Plaintiff's breach of contract claim. *See Chapman v. AI Transport*, 229 F.3d 1012, 1027 (11th Cir. 2000) (en banc) ("Parties opposing summary judgment are

appropriately charged with the responsibility of marshaling and presenting their evidence before summary judgment is granted, not afterwards."); Fed. R. Civ. P. 56(e)(3) ("If a party . . . fails to properly address another party's assertion of fact . . . the court may . . . grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it.") Accordingly, Gestamp is entitled to judgment as a matter of law regarding Plaintiff's breach of contract claim and breach of implied-in-fact contract claim.

VI.    Conclusion

For the aforementioned reasons, Gestamp's Motion to Strike is due to be DENIED. Plaintiff's First Motion for Protective Order is due to be DENIED. Gestamp's Permission Request is due to be DENIED. Plaintiff's Second Motion for Protective Order is MOOT. Gestamp's Motion for Summary Judgment is due to be GRANTED. A separate order consistent with this opinion will be entered.

Done this 20th day of May 2013.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE

171032